IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA,

v.   Criminal No. 3:09cr458-02

TRAMMELL O. WEST

## MEMORANDUM OPINION

This matter is before the Court on the MOTION TO RECONSIDER MOTION FOR JUDGMENT OF ACQUITTAL (Docket No. 47) filed by the defendant, Trammell O. West.

## BACKGROUND

On March 9, 2010, West was charged in a Criminal Information with "cursing and abusing" another person in violation of 18 U.S.C. § 13, assimilating Va. Code. § 18.2-416. The case was tried to the Court sitting without a jury on March 10 and 11, 2010.[1] West's mother was tried on assault charges at the same time. Mrs. West's case was decided by a jury which convicted her.

The evidence at trial showed that, on October 28, 2009, West was involved in three verbal altercations with officers at the Lee Gate at Fort Lee, Virginia. When West, who was driving his mother's car, first arrived at the Lee Gate, Security

---

[1] West also was tried on, and convicted of, a charge of reckless driving.

Officer Winthrop LaRoche informed West that the Department of Defense decal on his mother's vehicle was defective and needed to be replaced. (Id.) West became angry and began shouting expletives at Security Officer LaRoche before leaving the base. (Def. Br. at 1.) West returned to the Lee Gate, entered a lane of traffic manned by Security Officer Richards, then drove away at a high rate of speed, almost striking Security Officer Richards. (Gov. Response at 2.)

When West returned a third time to the Lee Gate, his mother, Patricia West, was driving the vehicle, and he was seated in the front passenger seat. (Id.) The security officers recognized the vehicle as it approached, called for assistance from the Military Police to investigate and, if appropriate, to levy a charge of reckless driving against West. To that end, Security Officer Richards directed Mrs. West to pull the vehicle over. West again became argumentative and cursed at Security Officer Richards. (Id.)

Specialist Robert Hester, a military police officer, who had responded to the call for assistance, asked West to exit the vehicle, to calm down, and to get on the ground (Id. at 2-3.) West got out of the vehicle, but, instead of getting on the ground, he stood with his hands outstretched and shouted, "What the fuck are you going to do? Fucking spray me? Fucking hit me?," "Fuck you," and "Get the fuck our of my face!" (Id. at

2

3.) Before Specialist Hester could gain control of West, Mrs. West intervened and proceeded to physically assault another responding officer, Officer Brian Michaels. (Id.) Both West and his mother were forcibly subdued and then detained. (Def. Br. at 1.)

At the close of evidence, West made a motion for judgment of acquittal under Fed. R. Crim. P. 29. The Court denied the motion and found West guilty. He now moves for reconsideration of the Court's ruling on the motion for acquittal, arguing that, as a matter of law, the evidence is insufficient to find him guilty of the crime of "curse and abuse." The motion is fully briefed and is ripe for decision.

## DISCUSSION

### I. The Legal Standard And The Virginia Statute At Issue

FED. R. CRIM. P. 29(a) provides that a court, on a defendant's motion, "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In considering a motion for judgment of acquittal, a court must view the evidence "in the light most favorable to the government." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

The statute which West was convicted of violating, Va. Code. § 18.2-416, provides:

> If any person shall, in the presence or hearing of another, curse or abuse such other person, or use any violent or abusive language to such person concerning himself or any of his relations, or otherwise use such language, under circumstances reasonably calculated to provoke a breach of the peace, he shall be guilty of a Class 3 misdemeanor.

So as not to run afoul of the First and Fourteenth Amendments, application of Va. Code § 18.2-416 is generally limited to "words that have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." Mercer v. Winston, 199 S.E.2d 724, 726, 214 Va. 281, 284 (1973) (analyzing Va. Code § 18.1-255, now Va. Code § 18.2-416).

The application of Va. Code § 18.2-416 is further limited when the abusive remark is addressed to a police officer. The First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston, Texas v. Hill, 482 U.S. 451, 461 (1987). While "[s]peech is often provocative and challenging...[it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience." Id. (citing Terminiello v. Chicago, 337 U.S. 1, 4 (1949)). And, properly trained police officers are required to exercise greater restraint in their responses to abusive language than are

4

ordinary citizens. <u>Martilla v. City of Lynchburg</u>, 535 S.E.2d 693, 697, 33 Va.App. 592, 600 (Va. Ct. App. 2000).

## II. Circumstances Surrounding West's Cursing And Abusive Language

Both the Government and West cite <u>Martilla</u> as the guidepost for assessing whether abusive language has a direct tendency to cause acts of violence by a trained police officer. In <u>Martilla</u>, the defendant walked away from law enforcement officers as they attempted to speak with him and sat on a porch with several other individuals. <u>Martilla</u>, 535 S.E.2d at 694, 33 Va.App. at 595. As law enforcement officers approached the porch, and, after they informed him that he was under arrest, the defendant began to make derogatory comments. <u>Id.</u> at 695, 33 Va.App. 592, 595. The defendant continued to make comments as the officer handcuffed him and ushered him off the porch. <u>Id.</u> Then, in a sarcastic, slightly belligerent tone, described as a little louder than normal but not screaming, the defendant called the officers "fucking pigs," told them they were "fucking jokes," and said they should be "at a fucking donut shop." <u>Id.</u> The defendant did not shake his fists, show a weapon, or make any verbal threats. <u>Id.</u> Virginia's intermediate appellate court held that, under those circumstances, the defendant's words did not have a direct tendency to cause a violent reaction by the police officers. <u>Id.</u> at 699, 33 Va.App. 592, 602.

West argues that the facts of this case are similar to those in Martilla. Specifically, he asserts that his words did not have the tendency to cause violence because there was no evidence at trial that the officers were so offended by the remarks as to engage in a breach of the peace. (Def. Br. at 2-3.) Additionally, West notes that the only violent conduct which occurred during the confrontation was that of his mother. (Id. at 3.)

The Government, on the other hand, argues that the circumstances surrounding West's cursing elevate it beyond the mere critical statements in Martilla. (Gov. Response at 4.) First, the Government argues the confrontation in this case occurred at the security gate of a United States military installation. (Id. at 6.) As the Government notes, the Lee Gate is manned 24 hours a day with armed security guards who are trained to respond immediately to all situations that pose a security concern. Thus, according to the Government, the location alone elevated the risk that law enforcement would respond with acts of violence.

Also, when West began shouting expletives at Specialist Hester, West was standing by the car door with his arms raised in an aggressive and threatening manner. And, unlike the defendant in Martilla who cursed only slightly louder than normal, West spoke loudly and in an angry and aggressive tone. Moreover,

6

West's misconduct occurred while the process of charging him with reckless driving was underway. Instead of obeying an instruction to get on the ground, West continued his foul and abusive language, thereby making it likely that the military policeman would have to resort to force to stabilize the already volatile situation. If there were any doubt that his misconduct could lead to a forceful response by the police officers, one need only consider that, at about the same time, similar misconduct by West's mother made it necessary for another officer to use pepper spray to control the situation.[2]

The scene at the Lee Gate was quite different from that in Martilla. Here, West was aggressive and threatening while he shouted curses and abusive language at the law enforcement officer. His misconduct occurred at a gate to a military base at a time when the officers were investigating a reckless driving charge which involved a near collision with a law enforcement officer. Further, West's mother was creating a disturbance at the scene of that investigation. The situation was a volatile one and it was quickly getting worse, in part, because of West's

---

[2] West cursed at least two different officers on two different occasions. First, he cursed Security Officer LaRoche on his first appearance at the Lee Gate. Then, on his third appearance at the Lee Gate, he cursed Specialist Hester. It is the latter incident that forms the basis for the charge in the Criminal Information. Accordingly, the Government's effort to differentiate Martilla on the theory that West was driving a vehicle when he cursed Security Officer LaRoche is of no moment.

7

cursing. Considering all the circumstances, West's cursing of Specialist Hester is conduct that the statute proscribes. Nor is West's speech and conduct protected by the First Amendment. Indeed, nothing in <u>Hill</u> or <u>Martilla</u> permits a citizen to curse police officers who are attempting to levy a charge against him and who, at the time, are dealing with a volatile situation which reasonably can be expected to be exacerbated (as indeed this one was) by cursing and using verbally abusive language. That is especially true where, as here, the misconduct occurs at the controlled entrance to a military base in such a way as to distract security officers and military police from their duties in controlling access to the base. Here, the cursing and abusive language easily could have led to the use of force against West by Specialist Hester, just as similar conduct led another officer to use pepper spray to control West's mother.

## CONCLUSION

For the reasons set forth above, the MOTION TO RECONSIDER MOTION FOR JUDGMENT OF ACQUITTAL (Docket No. 47) will be denied.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 29, 2010